UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

In re:                                                                    Chapter 11

HOYT TRANSPORTATION CORP.,                                Case No.  13-44299-NHL

Debtor.
-------------------------------------------------------x

## DEBTOR'S PLAN OF REORGANIZATION

Hoyt Transportation Corp. (the "Debtor"), hereby proposes this Chapter 11 Plan of Reorganization (the "Plan") pursuant to §1121(a) and other provisions of chapter 11 of Title 11 of the United States Code ("Code") and the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

## ARTICLE I

## OVERVIEW OF THE PLAN

The Debtor utilized Chapter 11 to resume normal business operations after it acquired 208 new bus routes in connection with a bankruptcy auction involving Atlantic Express, formally known as Metro Affiliates, Inc., *et al*, (Case Number 13-139). Following the acquisition of the new routes and related buses, the Debtor entered into a Collective Bargaining Agreement with Local 1181 and re-established its workforce of approximately 350 current employees. Most recently, the Debtor also resolved significant potential pension withdrawal liability claims. Accordingly, the Debtor is ready to emerge from Chapter 11 after a highly successful reorganization case.

## ARTICLE II

### DEFINITIONS

For the purpose of this Plan, the following terms shall have the meanings set forth below:

2.1    **"Administration Expense"** means all costs and expenses of administration allowed under §§503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, the actual and necessary expenses of preserving the Debtor's business, and the professional fees and expenses that may be awarded to counsel pursuant to §§330 and 331 of the Bankruptcy Code.

2.2    **"Bankruptcy Court"** means the United States Bankruptcy Court for the Eastern District of New York.

2.3    **"Bankruptcy Schedules"** means the schedules of assets and liabilities, lists and statements of financial affairs, together with any amendments thereto filed by the Debtor pursuant to Bankruptcy Rule 1007.

2.4    **"Claim"** means a right to payment as set forth in § 101(5) of the Code.

2.5    **"Claimant"** means the holder of a Claim.

2.6    **"Claims Bar Date"** means January 23, 2014, the date that has been established by the Bankruptcy Court by which all Creditors are required to have filed Proofs of Claim.

2.7    **"Class"** means a category of holders of Claims or Equity Interests as set forth in Article IV herein.

2.8    **"Confirmation"** means entry of the Confirmation Order.

2.9    **"Confirmation Date"** means the date of Confirmation.

2.10    **"Confirmation Fund"** means the funds needed for confirmation of this Plan to pay the dividends due on the Effective Date.  The monies are projected to total approximately $650,000 plus allowed Administration Expenses and allowed Priority Tax Claims.  Those monies will be deposited by the Debtor with the Disbursing Agent prior to the start of the Confirmation Hearing.

2.11    **"Confirmation Hearing"** means the hearing at which time the Bankruptcy Court considers entry of the Confirmation Order.

2.12    **"Confirmation Order"** means the order of the Bankruptcy Court approving the Plan pursuant to section 1129 of the Bankruptcy Code.

2.13    **"Creditor"** means any entity that holds a claim against the Debtor.

2.14    **"Disbursing Agent"** means Goldberg Weprin Finkel Goldstein as the Debtor's bankruptcy counsel.

2.15    **"Disputed Claim"** means:

(a)    any Claim that is listed in the Debtor's Bankruptcy Schedules as being disputed, contingent or unliquidated with respect to which no proof of claim has been timely filed; and

(b)    any Claim with respect to which an objection to the allowance thereof, in whole or in part, has been interposed within the applicable period fixed by the Bankruptcy Court.

2.16    **"Effective Date"** means the first business day after the Confirmation Order becomes final and non-appealable.

2.17    **"Equity Interests"** means the interests held by the Debtor's shareholders.

2.18    "**Petition Date**" means July 13, 2013 the date on which the voluntary Chapter 11 petition was filed by the Debtor.

2.19    "**Plan**" means this chapter 11 plan, including all modifications, supplements, appendices, and schedules hereto.

2.20    "**Priority Claim**" means all Claims that are entitled to priority pursuant to Bankruptcy Code § 507(a).

2.21    "**Unsecured General Claim**" means an allowed general claim that is not entitled to a priority in bankruptcy.

2.22    "**Unsecured Creditor**" means the holder of an Unsecured Claim.

2.23    "**U.S. Trustee Fees**" means fees payable pursuant to 28 U.S.C. § 1930 with interest as may be due.

## ARTICLE III

### TREATMENT OF UNCLASSIFIED CLAIMS

3.1.    Administrative Expense Claims consist of the professional fees and expenses to be awarded to the Debtor's professionals. The Debtor is current with all of its post-petition obligations owed to vendors and suppliers. The Debtor will continue to pay these obligations in the ordinary course of business without formal treatment under the Plan.

3.2    All professional fees and expenses of the Debtor's counsel remain subject to Bankruptcy Court approval after the filing of a written application and separate notice therefor. The professional fees and expenses shall be paid in full by the Debtor on either the Effective Date of the Plan or the entry of an Order of the Bankruptcy Court awarding such fees and expenses.

3.3    **United States Trustee Fees**.  All accrued U.S. Trustee Fees shall be paid by the

Debtor until the bankruptcy case is closed.    Any U.S. Trustee Fees owed on or before the

Effective Date of the Plan shall be paid on the Effective Date of the Plan.

## ARTICLE IV

## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A.    Summary

4.1.    The categories listed below classify Claims and Interests against the Debtor for all

bankruptcy purposes, including voting, confirmation and distributions pursuant to sections 1122

and 1123(a)(1) of the Bankruptcy Code.

**Summary of Classification and Treatment of Claims and Equity Interests**

| Class | Designation | Impaired |
|---|---|---|
| Class 1 | Remaining Balance of Secured Claim of Santander Bank | No |
| Class 2 | Priority Tax Claims of Governmental Units | No |
| Class 3 | Unsecured Claims | No |
| Class 4 | Unliquidated Tort Claims (with opportunity to object to classification) | No |
| Class 5 | Equity Interests | No |

### B.    Classification, Treatment and Voting

4.2.    **Class 1 —Secured Claim of Santander Bank**

Classification:    Class 1 is comprised of the remaining balance owed in connection with

the allowed Secured Claim of Santander Bank, which holds a first lien on many (but not all) of

the Debtor's buses and other operating assets.

Treatment:    Pursuant to the certain Stipulation and Agreed Order for Adequate

Protection, dated November 13, 2013 (ECF #61) (the "Stipulation"), the claim of Santander Bank

was effectively ratified and reaffirmed through the execution of an Amended, Modified and

Restated Promissory Note and Security Agreement ("the Modified Note"). The Debtor is current on all payments due to Santander Bank in connection with the Modified Note. Santander's Class 1 claim has been paid down dramatically during the Chapter 11 case to a current balance of approximately $499,699.33 as of March 2015 (subject to reconciliation). The terms of the Modified Note extend through November 20, 2015 and shall be carried forward for purposes of the Plan to be paid at a rate of approximately $63,500 per month until the final maturity date. Santander Bank shall also retain its lien and security interest against various of the Debtor's assets consistent with the Stipulation until such time as the Class 1 claim is paid in full.

Voting: Because the Class 1 secured claim is being paid in full in accordance with all its existing terms of the Modified Note and Stipulation, and the debt is not subject to any default, Santander Bank is unimpaired and deemed to accept the Plan pursuant to Section 1126(f) of the Bankruptcy Code.

### 4.3.    Class 2 —Priority Tax Claims of Governmental Units

Classification:    Class 2 is comprised of the allowed Priority Tax Claims of governmental units consisting of (i) a claim of $48,617.61 for New York City general corporate and utility taxes; and (ii) a potential New York State Department of Labor claim of $8,530.72 for unemployment insurance.

Treatment:    The Debtor recognizes the validity of the City tax claim of $48,617.61, which shall be paid in full on the Effective Date. The Department of Labor claim has been previously paid by the Debtor, and will be the subject of an objection.

Voting: Class 2 is unimpaired and deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

6

4.4.    **Class 3 – Unsecured General Claims**

Classification: Class 3 is comprised of the allowed Unsecured General Claims (excluding the three (3) remaining personal injury tort claims, but including the settled $400,000 claim of the Division 1181 A.T.U. Welfare and Pension Funds).

Treatment: Each holder of an Allowed Unsecured General Claim shall be paid in full (100%) on the Effective Date of the Plan, with post-petition interest at the federal judgment rate unless otherwise agreed by the parties. This distribution shall be in full settlement, satisfaction and release of such Claim.

Voting: Class 3 is unimpaired and deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.

4.5.    **Class 4 –Personal Injury Tort Claims**

Classification:    Class 4 is comprised of the three (3) remaining personal injury tort claims which have not previously been resolved pursuant to stipulations vacating the automatic stay.    As customary, the vast majority of personal injury tort claimants already moved for stipulations lifting the automatic stay so as to proceed against available insurance proceeds, and waived any deficiency claims against the Debtor's estate.    The below chart references which personal injury claims have been already resolved, and which personal injury claims remain open are still to be resolved pursuant to the Plan.

**(A)    Open Personal Injury Claims**

| Claim No. | Claimant(s) | Status |
|---|---|---|
| 11 | St. Joseph's School for the Deaf | unliquidated tort claim |
| 30 | Wendy Gooding | unliquidated tort claim |
| 37 | Jacob Hood | unliquidated tort claim |

7

### (B)    Resolved Personal Injury Claims

| Claim No. | Claimant(s) | Status |
|---|---|---|
| 1 | A.R. | Stipulation |
| 2 | Constance Hudgins | Stipulation |
| 8 | Becky Perkins-Peacock and Michelle Williams | Stipulation |
| 10 | Michele Williams | Stipulation |
| 17 | Flossie Cappuccio | Stipulation |
| 20 | D.B. and Cynthia Newton | Stipulation |
| 36 | Salvador Duran | Stipulation |
| Scheduled | A.R.O. and Maritz Rosasdo | Stipulation |
| Scheduled | M.V. and Maximo Vasquez | Stipulation |
| Scheduled | D.G. and Seferianna Gutierrez | Stipulation |
| Scheduled | Brianne Russo and Anthony Russo | Stipulation |
| Scheduled | Raul Camacho | Stipulation |
| Scheduled | Julie Losier | Stipulation |
| Scheduled | Rafael Espinal | Stipulation |
| Scheduled | Barry Duke and Candy Dennis | Stipulation |
| Scheduled | Maria Hernandez | Stipulation |
| Scheduled | Juan Griffin and Urena Castillo Santiago | Stipulation |
| Scheduled | Nicole Candelaria and Kristina May | Stipulation |

Treatment:    To the extent personal injury tort claims are already subject to existing stipulations vacating the automatic stay, those stipulations shall be carried forward for purposes of the Plan without any change or modification.  To the extent that a Class 4 personal injury tort claimant has not yet obtained relief from the automatic stay, the Plan hereby provides that the stay shall be deemed vacated on the Effective Date, whereupon an affected Class 4 personal injury tort claimant(s) is permitted to proceed against available insurance proceeds, subject to a waiver of any deficiency claims against the Debtor.

Voting: Class 4 Claims are deemed unimpaired even though the Plan waives any deficiency claim.  The Debtor, however, submits that this classification is permissible because

8

the potential of a deficiency claim is more theoretical than real, and the Plan's treatment of the automatic stay to proceed against available insurance is consistent with the treatment given to the vast majority of personal injury claims and does not materially alter their rights.

### 4.6    Class 5 — Equity Interests

Classification: Class 5 Equity interest consists of the Debtor's current shareholders, Joseph S. Termini, Jr. (33 1/3%), Karen E. Salpas (33 1/3%), and Chris J. Termini (33 1/3%).

Treatment:    The Class 5 equity holders shall continue to retain their respective shareholder interests in the Debtor and Reorganized Debtor (i.e., the Debtor following confirmation of the Plan) without further change or modification.   Pursuant to Order dated December 6, 2013, the Debtor was expressly granted the right after final resolution of the outstanding "back-pay claims," to treat the prior capital contributions to purchase new routes and buses as unsecured loans.  Following the Effective Date of the Plan, the capital contributions made by past and present stockholders with respect to the auction are converted under the Plan to unsecured loans to be re-paid after all other allowed claims are satisfied in full, on such terms which do not interfere with consummation of Plan.

Voting: As insiders of the Debtor, equity holders are not eligible to vote on the Plan.

## ARTICLE V

## IMPLEMENTATION OF THE PLAN

5.1.    **Implementation.**  The Plan shall be implemented from various cash funds held in reserve by the Debtor in its operating accounts. A Confirmation Fund in the sum of approximately $1,000,000 shall be established by the Debtor with the Disbursing Agent prior to the start of the

hearing to consider Confirmation. The funds shall be used to make all distributions to the allowed claims on the Effective Date.

5.2    **Rights and Powers of the Disbursing Agent.** The Disbursing Agent shall be empowered to (i) take all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (ii) make all distributions provided herein to the holders of allowed claims, (iii) prosecute, settle and enforce all causes of action and objections on behalf of the Debtor's estate, and (iv) exercise such other powers as may be deemed necessary and proper to implement the Plan.

5.3    **Post-Confirmation Management.** Following the Effective Date, management of the Debtor and Reorganized Debtor shall continue under the current corporate structure, with Chris Termini, Joseph ("Junior") Termini, and Karen Termini Salpas serving as officers and directors.

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

6.1.    **Disbursements.** All distributions shall be made by the Disbursing Agent with appropriate reserves, if any, to be established with respect to any Disputed Claims (i.e. those claims, in whole or part, under objection as of the Effective Date).

6.2.    **Claim Objection Deadline.** Any objections to Claims shall be served in accordance with the applicable provisions of the Bankruptcy Code and Rules prior to start of the Confirmation Hearing. Any claim under objection at the time of the Confirmation Hearing shall not be eligible to vote on the Plan pursuant to 11 U.S.C. § 1126(a).

6.3.    **No Distribution Pending Allowance.** Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any portion of a Disputed Claim

unless and until all objections to such Disputed Claim are resolved by Stipulation or Order of the Bankruptcy Court.

6.4.    **Unclaimed Distributions.**  If a distribution to the holder of any allowed Claim is returned as undeliverable or unclaimed, no further distribution shall be made to such Claimant unless and until the Debtor is notified in writing of such Claimant's then-current address within ninety (90) days of the Effective Date.  Following expiration of the ninety day period, the distribution shall be forfeited and revert back to the Debtor.

6.5.    **Disputed Claims Reserves.**  From and after the Effective Date, and until such time as a Disputed Claim(s) has been compromised, settled or determined by Final Order, the Debtor shall establish and maintain an appropriate reserve, as may be required in an amount determined by the Bankruptcy Court through estimation or otherwise (the "Claims Reserve"), relating to potential distributions to the holder of a Disputed Claim under objection at the time of Confirmation.  Following resolution of a Disputed Claim(s) any amounts remaining in the Claim Reserve shall be transferred back to the Debtor.

## ARTICLE VII

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1.    All executory contracts and unexpired leases not rejected pursuant to Order of the Bankruptcy Court as of the Confirmation Hearing shall be deemed assumed without further order of the Bankruptcy Court.

## ARTICLE VIII

## RETENTION OF JURISDICTION

8.1.   **Retention of Jurisdiction.** The Bankruptcy Court shall retain jurisdiction until the bankruptcy case is closed to hear the following matters:

(a)      Ensure that the Plan is substantially consummated, and enter an Order closing the case;

(b)      Resolve all matters relating to the Plan, including, without limitation, the enforcement, interpretation and any issues or dispute relating to the consummation of the Plan;

(c)      Allow, disallow, determine, liquidate or classify, any secured or unsecured Claims, including, without limitation, (i) the resolution of any request for payment of professional fees or other Administrative Expenses; and (ii) the resolution of any objections to the allowance of Claims pending at the time of Confirmation;

(d)      Grant or deny applications for allowance of final compensation and reimbursement of expenses by the professionals retained during the bankruptcy case;

(e)      Resolve any other motions or applications pending on the Effective Date; and

(f)      Enter such Order(s) as may be necessary or appropriate to implement or consummate the Plan.

12

## ARTICLE IX

## MISCELLANEOUS PROVISIONS

9.1.    **Orders in Aid of Consummation.**  Pursuant to sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter such Order(s) in aid of implementation the Plan as may be necessary.

9.2.    **Compliance with Tax Requirements.**  In connection with the Plan, the Debtor shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities.

9.3.    **Due Authorization by Creditors.**  Each Creditor who accepts a distribution warrants that it is the lawful owner of its Claim and is authorized to accept the distribution provided for in the Plan and that there are no outstanding liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such Creditor under the Plan.

9.4.    **Filing of Additional Documents.**  Except as otherwise provided in the Plan, the Debtor may file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

9.5.    **Section Headings.**  The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

9.6.    **Computation of Time.**  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

9.7.    **Successors and Assigns.** The rights, benefits and obligations of any creditor named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any successor or assigns of such entity.

9.8.    **Notices.** All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

(a)     to the Debtor at: Goldberg Weprin Finkel Goldstein LLP, 1501 Broadway, 21st Floor, New York, NY 10036, Attn: Kevin J. Nash, Esq. (knash@gwfglaw.com);

(b)     if to any Creditor at (i) the addresses set forth on the respective proofs of claim filed by such holders; (ii) the addresses set forth in any written notices of address changes delivered to the Debtor after the Effective Date; or (iii) the address reflected in the Bankruptcy Schedules if no proof of claim is filed and the Debtor has not received a written notice of a change of address; and

(c)     if to any entity that has filed a notice of appearance, at the addresses set forth on such notice of appearance.

9.9.    **Governing Law.** The rights and obligations arising under the Plan shall be governed by, and in accordance with the Bankruptcy Code and Rules and the laws of the State of New York.

9.10.   **Other Actions.** Nothing contained herein shall prevent the Disbursing Agent from taking such actions as may be reasonably necessary to implement the Plan, although such actions may not specifically be provided for within the Plan.

9.11.  **Payment of Statutory Fees.**  All U.S. Trustee fees payable pursuant to section 1930(a) of title 28 of the United States Code shall be paid on the Effective Date, or as soon thereafter as practicable. From and after the Effective Date, the Disbursing Agent shall pay the U.S. Trustee fees until entry of an order closing the Chapter 11 case. In addition, the Debtor shall file post-confirmation quarterly reports in conformity with U.S. Trustee guidelines, until entry of an order closing the Chapter 11 case.

9.12.  **Modification of Plan.**  The Plan may be amended or modified by the Debtor (a) before the Confirmation Date, to the extent permitted by section 1127 of the Bankruptcy Code; (b) after the Confirmation Date and prior to substantial consummation of the Plan, as defined in section 1101(2) of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order or to accomplish such matters as may be necessary or appropriate to carry out the purposes and effects of the Plan.

9.13.  **Closing of the Chapter 11 Case.**  Promptly upon substantial consummation of the Plan, the Debtor shall file with the Bankruptcy Court an application to close the Chapter 11 case.

Dated:  New York, New York
        April 13, 2015

HOYT TRANSPORTATION CORP.

GOLDBERG WEPRIN FINKEL
GOLDSTEIN LLP
Attorneys for the Debtor
1501 Broadway, 21st Floor
New York, NY 10036

By:  /s/ Chris Termini
     Chris Termini
     Vice President

By:  /s/ Kevin J. Nash, Esq.
     Kevin J. Nash, Esq.

x:\gwfg\new data\yen\word\hoyt transportation corp - terch.32869\plan of reorganization 04-13-15 (v1).doc

15