UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

In re:                                              Chapter 11

HOYT TRANSPORTATION CORP.,                          Case No. 13-44299 (NHL)

                             Debtor.

-----------------------------------------------------------x

## DISCLOSURE STATEMENT PURSUANT TO 11 U.S.C. §1125
## RELATING TO DEBTOR'S PLAN

Hoyt Transportation Corp. (the "Debtor") hereby submits this Disclosure Statement (the

"Disclosure Statement"), pursuant to §1125 of Title 11, United States Code (the "Bankruptcy

Code"), in connection with Debtor's accompanying Plan of Reorganization of even date (the

"Plan"). Defined terms in the Plan shall have the same meaning for purposes of this Disclosure

Statement.

## I. INTRODUCTION

The Plan culminates a successful reorganization case in which the Debtor was able to

resume normal operations following the acquisition of 208 new bus routes in connection with the

bankruptcy auction involving Atlantic Express [Metro Affiliates, Inc., *et al* (Case Number 13-

13591)]. Pursuant to this Court's Order dated December 6, 2013, the Debtor obtained approval

to participate in the Atlantic Express auction sale, and emerged as the high bidder for various

special education routes and the purchase of related school buses. The Debtor's efforts to resume

operations received the full support of both the NYC Department of Education ("DOE") and

Local 1181 Amalgamated Transit Union ("Local 1181").

During the Chapter 11 case, the Debtor entered into a new Collective Bargaining

Agreement with Local 1181 and re-established its workforce of approximately 350 current

1

employees. Just recently, the Debtor also resolved significant potential pension withdrawal liability claims pursuant to Order dated March 23, 2015. Accordingly, the Debtor is now ready to emerge from Chapter 11. To this end, the Debtor has filed the Plan, which provides, *inter alia*, full payment (100%) to the holders of allowed unsecured claims and equivalent treatment for the remaining three (3) personal injury claims.

## II.  SCOPE OF THIS DISCLOSURE STATEMENT

This Disclosure Statement has been prepared by the Debtor, in consultation with its attorneys, Goldberg Weprin Finkel Goldstein LLP, to provide creditors with all relevant information regarding the Debtor's ability to emerge from Chapter 11 and fund the distributions provided by the Plan. Pursuant to 11 U.S.C. §105(d)(2)(B), the Disclosure Statement has been conditionally approved by the Bankruptcy Court as containing adequate information within the meaning of 11 U.S.C. §1125 necessary for creditors to (i) evaluate the Plan; and (ii) determine whether to accept or reject the Plan. Final approval of the Disclosure Statement will be sought by the Debtor in conjunction with actual confirmation of the Plan. The Court's preliminary approval of the Disclosure Statement is conditional, and creditors have the right to object to final approval of the Disclosure Statement, and to object to the Plan itself if they so elect. However, the Debtor has made a significant effort to get back in business so creditors can be paid in full, and hopes that creditors will support these efforts without any objection.

## III.  CONFIRMATION PROCESS

### The Combined Hearing.

Pursuant to Section 1128 of the Bankruptcy Code, the Bankruptcy Court has scheduled a combined hearing to consider both final approval of this Disclosure Statement and confirmation

2

of the Plan on the same day and time, to wit May __, 2015 at __:__ __.m. The combined hearing shall be conducted by the Honorable Nancy Hershey Lord, U.S. Bankruptcy Judge, Courtroom 2529, at the U.S. Bankruptcy Court located at 271-C Cadman Plaza East, Brooklyn, NY 11201.

**Voting on the Plan.**

Because the Plan provides full payment to the Class 1 secured claim of Santander Bank, as well as full payment to Class 3 unsecured creditors holding allowed claims, plus also permits the remaining Class 4 personal injury claimants to proceed against available insurance, the Plan designates all classes of claims as being unimpaired. Thus, the Debtor does not need to formally solicit actual ballots from creditors *per se*. To avoid any potential issues, however, the Debtor requests that all creditors execute a ballot to accept the Plan, even if their votes might not be needed. A ballot accompanies the Plan and Disclosure Statement. Any creditor wishing to vote on the Plan should return their ballots to the Debtor's counsel by mail to Goldberg Weprin Finkel Goldstein LLP, 1501 Broadway, New York, New York 10036, Attn: Kevin J. Nash or by email to knash@gwfglaw.com on or before May ____, 2015.

Any objections to final approval of the Disclosure Statement or confirmation of the Plan must be in writing and filed with the Clerk of the Bankruptcy Court, through the Court's ECF System and served upon Goldberg Weprin Finkel Goldstein LLP, 1501 Broadway, 22nd Floor, New York, New York 10036, attention: Kevin J. Nash, Esq., with a courtesy copy delivered to the Hon. Nancy Hershey Lord, United States Bankruptcy Court, 271-C Cadman Plaza East, Room 1595, Brooklyn, NY 11201, so as to be received on or before May ____, 2015.

3

## IV. SIGNIFICANT EVENTS LEADING TO THE CHAPTER 11 FILINGS

For decades prior to bankruptcy, the Debtor operated a successful school bus company servicing the DOE, specializing in the transportation of students with disabilities throughout the metropolitan area (K-12). The Debtor's last contract with DOE expired prior to bankruptcy on June 30, 2013. After fundamental changes in the school bus industry relating to the elimination of Employee Protection Provisions (EPP's), the Debtor found itself uncompetitive because new contractors were not required to hire drivers and escorts off a Master seniority list. In comparison, the Debtor was locked into hiring from the Master seniority list and thus the Debtor's costs of labor were much higher than its competitors. For this reason, the Debtor lost out on the renewal of its last pre-bankruptcy DOE contract in 2013. This prompted the need to file a Chapter 11 petition, while the Debtor attempted to reorient its business.

## V. SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASE

The Debtor proceeded proactively throughout the Chapter 11 case, first to reduce its excess bus inventory and then to seize an unexpected opportunity brought about by the Atlantic Express auction. Entering Chapter 11 in July 2013, the Debtor maintained a fleet of more than 300 school buses, many of which were subject to secured credit facilities provided by Sovereign Bank, now known as Santander Bank.

Early on, the Debtor received offers from local bus companies to purchase the Debtor's excess inventory. The Debtor sold approximately 100 buses for a total sum of approximately $1,580,000 out of the ordinary course of business. The initial sales were conducted in three stages, all approved by the Bankruptcy Court under separate orders. The sales were pursued with the consent of Santander Bank, which received the bulk of the net sale proceeds to reduce the Debtor's

4

outstanding loan balances from approximately $3.31 million to approximately $1.75 million. In conjunction with these sales, the Debtor also executed a modified promissory note to restructure its loans with Santander Bank. This restructuring was approved as part of an adequate protection stipulation providing for revised monthly payments of approximately $63,500 per month. The Debtor has honored all of its post-petition obligations owed to Santander Bank. Thus, Santander's secured claim has since been reduced after the Chapter 11 filing to less than $500,000 as a result of ongoing monthly payments.

Prior to the Atlantic Express auction, the Debtor pursued discussions with various parties to attempt to purchase excess bus routes. These efforts gained significant momentum when the Debtor learned about the availability of new routes being offered by Atlantic Express. To participate in the auction, however, the Debtor needed to obtain approval of this Court so the Debtor's financial wherewithal would not be questioned. The Debtor received the needed Bankruptcy Court approval on December 6, 2013, just before the start of the auction. This laid the groundwork for the Debtor's subsequent acquisition of the new routes and ramp wagons, which was funded by the Debtor's principals subject to their right to convert their capital contributions to an unsecured loan once all back-pay obligations were satisfied. The Debtor obtained final approval to close with Atlantic Express on December 26, 2013, allowing the Debtor to be literally up and running after the Christmas holiday.

In conjunction with the new routes, the Debtor purchased approximately 140 Ramp Wagons and 20 Mini-Wagons. All told, the Debtor's total bid was $3,770,250 (approximately $500,000 of which was attributable to the new routes and the balance attributable to the Ramp Wagons and

5

Mini-Wagons). Most of the new routes (143) continued into 2015 and are expected to be renewed by DOE for the upcoming 2016 school year.

The Debtor's resumption of operations also required execution of a new collective bargaining agreement ("CBA") with Local 1181. The Debtor's labor negotiations commenced shortly after the auction and culminated with a new CBA which was ratified on March 28, 2014 and thereafter approved by the Bankruptcy Court on June 4, 2014.

As part of the new CBA, the Debtor agreed to settle various back-pay obligations emanating out of an industry-wide NRLB ruling finding that an "impasse" had not been reached before the school bus industry, as a whole, implemented unilateral changes to the prior collective bargaining agreements with Local 1181. Without negotiating to impasse, the unilateral changes were reversed and all bus companies involved in the industry (including the Debtor) became subject to back-pay obligations. Certain aspects of the back-pay obligations were reimbursable by DOE so the Debtor was not without any recourse.

Thus, approval of the new CBA also brought into play a settlement of the Debtor's residual claims for reimbursement against DOE, as well as resolution of claims asserted by the NLRB for the same back-pay obligations. Following all reconciliations and adjustments to account for each employee's specific employment history, the Debtor's total back-pay obligations amounted to approximately $2,881,890. Of this amount, approximately $2,010,211 was reimbursed by DOE in various stages late last summer. The Debtor funded the balance of approximately $871,678 including applicable employer related payroll taxes.

With a new CBA in place and the back-pay obligations resolved, the last significant matter to be addressed related to a highly controversial pension withdrawal claim filed by Division 1181

6

A.T.U. – New York Employees' Pension Fund (the "Pension Fund") in the sum of more than $22 million. The claim was objectionable on a number of grounds. The Debtor retained special ERISA counsel in the event that the claim had to be litigated.

After months of negotiations, however, the Debtor finally reached an agreement to settle the claim for $400,000, plus a mutual reservation of rights with respect to any future withdrawal liability. The Bankruptcy Court approved the settlement on March 23, 2015 after the inclusion of an additional reservation in favor of DOE in connection with certain federal litigation between the Pension Fund and DOE. The $400,000 settlement shall be funded by the Debtor without any contribution from DOE under the Plan. Accordingly, the Debtor will move to expunge the contingent claim filed by DOE for contribution if the claim is not withdrawn voluntarily. The settlement of the alleged pension withdrawal liability cleared the last potential obstacle to confirmation.

## VI. POST-PETITION OPERATIONS

The Debtor has been a good citizen in bankruptcy and complied with its reporting requirements and payment of U.S. Trustee fees. Since entering Chapter 11 in July 2013, the Debtor has generated net profits of $4,443,719, computed on a Cash Method of Accounting which does not reflect certain tax adjustments, such as accruals and depreciation expenses, and therefore the net profits on a tax basis are lower. Nevertheless, the Debtor maintains current cash balances of close to $5.0 million. A composite post-petition profit and loss statement is annexed hereto as Exhibit "A".

The Plan provides that the Debtor will use a portion of its existing cash, in the amount of approximately $1,000,000, to pay all allowed claims in full. The necessary cash funds will be

7

deposited by the Debtor into a separate confirmation and disbursing account maintained by the Debtor's counsel prior to the start of the Confirmation Hearing.

## VII. STATUS OF CLAIMS

### A. Unsecured Creditors

At this point, many of the unsecured claims are undisputed, as noted in the charts set forth below. Prior to the start of the Confirmation Hearing, the Debtor intends to file various claims objections, also noted below. The most prominent objection involves the disputed claim of New York State Workers' Compensation Board ("WCB") for alleged deficits relating to a self-insured trust ("GSIT") that became insolvent in 2008, in which the Debtor was a participant along with many other companies. WCB's claim of $1,155,018.69 is highly defensible based on a well-publicized statewide litigation in which the WCB was excoriated by Appellate Division, Fourth Department, for its abysmal oversight of GSIT insurance trusts. The Debtor is only one of a dozen of companies involved in the statewide litigation, but it suffices to say that WCB's entitlement to any recovery against the Debtor is dubious to say the least.

### B. Tort Claims

The Debtor remains subject to three (3) personal injury claims which have not yet been resolved in bankruptcy by stipulation. The Plan provides that the remaining personal injury claims will be allowed to proceed against available insurance. This treatment functionally leaves the open personal injury claims unimpaired since they receive the same rights as other personal injury claimants that have previously obtained relief from the automatic stay. Any remaining Class 4 personal injury claimant who objects to the Debtor's proposed treatment or classification, may file an objection to confirmation of the Plan, whereupon the issue will be decided at the

8

Confirmation Hearing. If no objections are filed, it will be presumed that the Debtor's classification and treatment of the remaining Class 4 personal injury claims is satisfactory.

## VIII. CLASSIFICATION AND TREATMENT OF CLAIMS UNDER THE PLAN

The Plan classifies the various pre-petition claims against the Debtor into essentially four classes as outlined below. Administrative expenses are not separately classified, and consist of the professional fees and expenses to be awarded to the Debtor's bankruptcy counsel, Goldberg Weprin Finkel Goldstein LLP. These fees and expenses are projected to amount to approximately $250,000. Additionally, U.S. Trustee Fees shall be paid by the Debtor until the bankruptcy case is closed.

### A. Summary of Classification and Treatment of Claims and Equity Interests

| Class | Designation | Impaired |
|-------|-------------|----------|
| Class 1 | Remaining Balance of Secured Claim of Santander Bank | No |
| Class 2 | Priority Tax Claims of Governmental Units | No |
| Class 3 | Unsecured Claims | No |
| Class 4 | Personal Injury Tort Claims (with opportunity to object to classification) | No |
| Class 5 | Equity Interests | No |

### B.    Classification, Treatment and Voting

### Class 1 —Secured Claim of Santander Bank

Classification: Class 1 is comprised of the remaining balance owed in connection with the allowed Secured Claim of Santander Bank, which holds a first lien on many (but not all) of the Debtor's buses and other operating assets.

Treatment:    Pursuant to the certain Stipulation and Agreed Order for Adequate Protection, dated November 13, 2013 (ECF #61) (the "Stipulation"), the claim of Santander Bank was effectively ratified and reaffirmed through the execution of an Amended, Modified and

9

Restated Promissory Note and Security Agreement ("the Modified Note"). The Debtor is current on all payments due to Santander Bank in connection with the Modified Note. Santander's Class 1 claim has been paid down dramatically during the Chapter 11 case to a current balance of approximately $499,699.33 as of March 2015 (subject to reconciliation). The terms of the Modified Note extend through November 20, 2015 and shall be carried forward for purposes of the Plan to be paid at a rate of approximately $63,500 per month until the final maturity date. Santander Bank shall also retain its lien and security interest against various of the Debtor's assets consistent with the Stipulation until such time as the Class 1 claim is paid in full.

Voting: Because the Class 1 secured claim is being paid in full in accordance with all its existing terms of the Modified Note and Stipulation, and the debt is not subject to any default, Santander Bank is unimpaired and deemed to accept the Plan pursuant to Section 1126(f) of the Bankruptcy Code.

### Class 2 —Priority Tax Claims of Governmental Units

Classification:  Class 2 is comprised of the allowed Priority Tax Claims of governmental units consisting of (i) a claim of $48,617.61 for New York City general corporate and utility taxes; and (ii) a potential New York State Department of Labor claim of $8,530.72 for unemployment insurance.

Treatment:  The Debtor recognizes the validity of the City tax claim of $48,617.61, which shall be paid in full on the Effective Date. The Department of Labor claim has been previously paid by the Debtor, and will be the subject of an objection.

Voting: Class 2 is unimpaired and deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

10

### Class 3 – Unsecured General Claims

Classification: Class 3 is comprised of the allowed Unsecured General Claims (excluding the three (3) remaining personal injury tort claims, but including the settled $400,000 claim of the Division 1181 A.T.U. Welfare and Pension Funds). A schedule of the acknowledged and Allowed Class 3 claims is set forth below:

### Acknowledged Class 3 Unsecured Claims

| Claim No. | Claimant | Amount of Claim | Class |
|---|---|---|---|
| 6 | Sarad, Inc. | $2,146.37 | Class 3 |
| 9 | New York Transmission Group | $12,823.13 | Class 3 |
| 12 | Crown Towing Service, Inc. | $1,284.13 | Class 3 |
| 14 | Mintz & Gold LLP | $7,363.04 | Class 3 |
| 15 | Northeast Battery | $182.04 | Class 3 |
| 19 | McElroy Deutsch | $8,908.50 | Class 3 |
| 22 | WEX Bank | $51,631.37 | Class 3 |
| 23 | WEX Bank | $12,840.50 | Class 3 |
| 26 | Div. 1181 Pension Fund | $400,000.00 | Class 3 |
| 29 | Greenberg Traurig | $96,925.74 | Class 3 |
| 35 | C.A.D.I. Auto Parts | $3,344.82 | Class 3 |
| 39 | Windels Max Lane & Mittendorf | 14,119.26 | Class 3 |
| 41 | Ford Harrison | $6,971.00 | Class 3 |
| Scheduled | All Points B.U.S., Inc. | $137.14 | Class 3 |
| Scheduled | Alliance Health & Safety | $136.64 | Class 3 |
| Scheduled | Bronx Glass & Lights Group | $136.09 | Class 3 |
| Scheduled | Cintas Corp. | $108.32 | Class 3 |
| Scheduled | D.R.S. | $1,368.00 | Class 3 |
| Scheduled | KayCee Jr. Enterprises, LLC | $8,206.50 | Class 3 |
| Scheduled | Kristal Auto Mall | $312.50 | Class 3 |
| Scheduled | Lena Terminal | $13,000.00 | Class 3 |
| Scheduled | MEP Automotive Warehouse | $516.23 | Class 3 |
| Scheduled | NCO Financial Systems, Inc. | $810.00 | Class 3 |
| Scheduled | RMK Distributors, Inc. | $295.34 | Class 3 |
| Scheduled | Sand Automotive Warehouse | $96.53 | Class 3 |
| Scheduled | Sanitation Salvage Corp. | $250.51 | Class 3 |
| Scheduled | Viking Sanitation, Inc. | $544.38 | Class 3 |
| Total | Allowed Claim 3 claims | $644,458.08 | |

The Debtor also disputes certain Class 3 claims, and intends to file objections to the following claims:

## Disputed Class 3 Unsecured Claims

| Claim No. | Claimant | Amount of Claim | Status |
|---|---|---|---|
| 4 | Consolidated Edison Company of New York | $1,884.14 | Disputed |
| 5 | JP Morgan Bank, NA | $9,940.48 | Disputed |
| 18 | Fleetcor Technologies | $61,520.57 | Disputed |
| 21 | Carmine Falcone | $4,902.20 | Disputed |
| 24 | Everbank Commercial Finance | $26,234.70 | Disputed |
| 28 | Crown Towing Service, Inc. | $55,391.57 | Disputed |
| 34 | AmTrust North America | $63,209.00 | Disputed |
| 38 | NYS Workers Compensation Board | $1,155,018.69 | Disputed |
| 40 | Peter Louis | $1,000.00 | Disputed |
| Scheduled | BP | $61,284.42 | Disputed |

Treatment: Each holder of an Allowed Unsecured General Claim shall be paid in full (100%) on the Effective Date of the Plan, with post-petition interest at the federal judgment rate unless otherwise agreed by the parties. This distribution shall be in full settlement, satisfaction and release of such Claim.

Voting: Class 3 is unimpaired and deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.

### Class 4 –Personal Injury Tort Claims

Classification:    Class 4 is comprised of the remaining three (3) personal injury tort claims which have not previously been resolved pursuant to stipulations vacating the automatic stay.   As customary, the vast majority of personal injury tort claimants already moved for stipulations lifting the automatic stay so as to proceed against available insurance proceeds, and waived any deficiency claims against the Debtor's estate.  The below chart references which

12

personal injury claims have been already resolved and which personal injury claims remain open

and are still to be resolved pursuant to the Plan.

## Open Class 4 Claims

| Claim No. | Claimant(s) | Amount of Claim | Status |
|---|---|---|---|
| 11 | St. Joseph's School for the Deaf | unliquidated tort claim | Class 4 |
| 30 | Wendy Gooding | unliquidated tort claim | Class 4 |
| 37 | Jacob Hood | unliquidated tort claim | Class 4 |

## Resolved Personal Injury Claims

| Claim No. | Claimant(s) | Amount of Claim | Status |
|---|---|---|---|
| 1 | A.R. | $0.00 | Stipulation |
| 2 | Constance Hudgins | $0.00 | Stipulation |
| 8 | Becky Perkins-Peacock and Michelle Williams | $0.00 | Stipulation |
| 10 | Michele Williams | $0.00 | Stipulation |
| 17 | Flossie Cappuccio | $0.00 | Stipulation |
| 20 | D.B. and Cynthia Newton | $0.00 | Stipulation |
| 36 | Salvador Duran | $0.00 | Stipulation |
| Scheduled | A.R.O. and Maritz Rosasdo | $0.00 | Stipulation |
| Scheduled | M.V. and Maximo Vasquez | $0.00 | Stipulation |
| Scheduled | D.G. and Seferianna Gutierrez | $0.00 | Stipulation |
| Scheduled | Brianne Russo and Anthony Russo | $0.00 | Stipulation |
| Scheduled | Raul Camacho | $0.00 | Stipulation |
| Scheduled | Julie Losier | $0.00 | Stipulation |
| Scheduled | Rafael Espinal | $0.00 | Stipulation |
| Scheduled | Barry Duke and Candy Dennis | $0.00 | Stipulation |
| Scheduled | Maria Hernandez | $0.00 | Stipulation |
| Scheduled | Juan Griffin and Urena Castillo Santiago | $0.00 | Stipulation |
| Scheduled | Nicole Candelaria and Kristina May | $0.00 | Stipulation |

Treatment:    To the extent personal injury tort claims are already subject to existing

stipulations vacating the automatic stay, those stipulations shall be carried forward for purposes

of the Plan without any change or modification.  To the extent that a Class 4 personal injury tort

claimant has not yet obtained relief from the automatic stay, the Plan hereby provides that the

stay shall be deemed vacated on the Effective Date, whereupon an affected Class 4 personal injury tort claimants(s) is permitted to proceed against available insurance proceeds, subject to a waiver of any deficiency claims against the Debtor.

Voting: Class 4 Claims are deemed unimpaired even though the Plan waives any deficiency claim. The Debtor, however, submits that this classification is permissible because the potential of a deficiency claim is more theoretical than real, and the Plan's treatment of automatic stay to proceed against available insurance is consistent with the treatment already given to the vast majority of personal injury claims and does not materially alter their rights.

### Class 5 — Equity Interests

Classification: Class 5 Equity interest consists of the Debtor's current shareholders, Joseph S. Termini, Jr. (33 1/3%), Karen E. Salpas (33 1/3%), and Chris J. Termini (33 1/3%).

Treatment:    The Class 5 equity holders shall continue to retain their respective shareholder interests in the Debtor and Reorganized Debtor (i.e., the Debtor following confirmation of the Plan) without further change or modification. Pursuant to Order dated December 6, 2013, the Debtor was granted the right, after final resolution of the outstanding "back-pay claims," to treat the prior capital contributions to purchase new routes and buses as unsecured loans. Following the Effective Date, the capital contributions made by past and present stockholders with respect to the auction are converted under the Plan to unsecured loans to be re-paid after all other allowed claims are satisfied in full, on such terms which do not interfere with consummation of Plan.

Voting: As insiders of the Debtor, equity holders are not eligible to vote on the Plan.

14

## IX. **IMPLEMENTATION OF THE PLAN**

**Implementation**. The Plan shall be implemented from various cash funds held in reserve by the Debtor in its operating accounts. A Confirmation Fund in the sum of approximately $1,000,000 shall be established by the Debtor with the Disbursing Agent prior to the start of the hearing to consider Confirmation. The funds shall be used to make all distributions to the allowed claims on the Effective Date.

**Rights and Powers of the Disbursing Agent.** The Disbursing Agent shall be empowered to (i) take all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (ii) make all distributions provided herein to the holders of allowed claims, (iii) prosecute, settle and enforce all causes of action and objections on behalf of the Debtor's estate, and (iv) exercise such other powers as may be deemed necessary and proper to implement the Plan.

**Post-Confirmation Management.** Following the Effective Date, management of the Debtor and Reorganized Debtor shall continue under the current corporate structure, with Chris Termini, Joseph ("Junior") Termini, and Karen Termini Salpas serving as officers and directors.

## X.    **LEGAL REQUIREMENTS FOR CONFIRMATION OF THE PLAN**

Under bankruptcy law, a plan can be confirmed if it is accepted by all classes of unimpaired claims and otherwise meets the requirements of 11 U.S.C. § 1129(a). In this Chapter 11 case, all allowed claims will be paid in full, such that there are no impaired classes.

The other requirements of Section 1129(a) include determinations by the Bankruptcy Court that: (i) the contents of the Plan comply with various technical requirements of the Bankruptcy Code, (ii) the Debtor has proposed the Plan in good faith, (iii) the Debtor has made

15

disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan, (iv) the Plan is in the "best interest" of all creditors, as may be applicable, and (v) the Plan is feasible.

As to feasibility, the Debtor has operated profitably throughout the Chapter 11 case and maintains cash funds necessary for Confirmation, to be disbursed as follows:

| Administrative Claims | $250,000.00 |
|---|---|
| U.S. Trustee Quarterly Fees | $13,000.00 |
| Class 2 Priority Tax Claims | $48,617.61 |
| Class 3 Unsecured Claims* | $644,458.08 |
| Class 4 Personal Injury Tort Claims | $0.00 |
| Total Cash Needs | $956,075.69 |

Based on the foregoing, the Debtor believes that all of the conditions for confirmation have been or will be met.

---

* In addition to the acknowledged unsecured claims, the Debtor disputes some $1,440,000 in Class 3 claims, as shown in the chart in Section VIII, above. The Debtor has more than enough funds remaining after making the payments under the Plan to cover the disputed claims which may be subsequently allowed.

## XI. CONCLUSION

The Debtor respectfully submits that the Plan represents a fair and proper conclusion

to this bankruptcy case, and should be confirmed.

Dated:  New York, New York
        April 13, 2015

**HOYT TRANSPORTATION CORP.**

**GOLDBERG WEPRIN FINKEL
GOLDSTEIN LLP**
Attorneys for the Debtor
1501 Broadway, 21st Floor
New York, NY 10036

By:    /s/ Chris Termini
       Chris Termini
       Vice President

By:    /s/ Kevin J. Nash, Esq.
       Kevin J. Nash, Esq.

# EXHIBIT A

## Post Petition Composite Profit And Loss Statement
## July 2013 - February 2015

REVENUE

| | |
|---|---|
| Gross Revenue | $42,576,698 |

EXPENSES

| | |
|---|---|
| Auto and Truck Expense | $41,407 |
| Safety Awards | $12,950 |
| Employee Benefits Programs | $194,946 |
| Officers/Compensation | $1,019,911 |
| Insurance | $1,459,207 |
| Office Expense | $81,620 |
| Pension & Profit-Sharing Plans | $183 |
| Repairs and Maintenance | $59,440 |
| Rent and Lease Expense | $1,001,459 |
| Driver/Escort Payrolls | $20,625,864 |
| Taxes - Payroll | $2,901,645 |
| Taxes - Real Estate | $29,360 |
| Taxes - Other | $299,660 |
| Travel and Entertainment | $14,980 |
| Utilities | $150,989 |
| Other *(attach schedule 1)* | $10,534,618 |
| Total Operating Expenses Before Depreciation | $38,428,239 |
| Other Income *(attach schedule 2)* | $451,687 |
| Interest Expense | $86,262 |
| U. S. Trustee Quarterly Fees | $61,753 |

PROFIT

| | |
|---|---|
| Net Profit (Loss) | $4,443,719 |

| | |
|---|---|
| OTHER OPERATIONAL EXPENSES | |
| Vehicle Maintenance & Repair | $1,773,326 |
| ADP | $83,586 |
| Bank Charges | $7,950 |
| DRUG TEST | $10,890 |
| LICENSES | $39,361 |
| GAS | $1,633,588 |
| Tolls | $306,674 |
| Accounting/Consulting | $269,522 |
| BUS RENTAL | $98,451 |
| 19A COMPLIANCE | $24,300 |
| EDUCATION | $25,503 |
| UNION PENSION AND WELFARE | $6,118,077 |
| DUES AND ABSTRACTS | $1,275 |
| CONTRACT TRANSFER FEE | $2,000 |
| COMPUTER MAINT | $21,006 |
| UNIFORMS | $17,489 |
| RADIO | $22,698 |
| SECURITY | $78,922 |
| TOTAL | $10,534,618 |

| | | |
|---|---|---|
| | | |
| OTHER INCOME | | |
| Interest income Kaycee Jr Enterprises LLC | | $34,035 |
| FEDERAL AND STATE GAS TAX REFUND | | $417,652 |